IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FERNANDO NUNEZ JR.          )
          Plaintiff,      )   Civil Action NO. 3:20-cv-00208
                   )
v.                          )   Magistrate Judge Lisa Pupo Lenihan
                   )
MARK BORSTNAR,              )
LANDON SINCLAIR,            )
BRANDON CROYLE,             )
LT.LEVADNUK, et al.,        )
          Defendants.     )

**FILED**

DEC 15 2020

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

AMENDED COMPLAINT

## I. Introduction

Plaintiff Fernando Nunez Jr commenced this action by filing a §1983 complaint against four prison officials employed by the Pennsylvania Department of Corrections ("DOC"), based upon events and actions that occurred while he was incarcerated at the state correctional institution at Somerset ("SCI Somerset"), on a level 5 restricted housing unit ("RHU").

## II. Jurisdiction And Venue

1. This Court has original jurisdiction under 28 U.S.C. §1331 and 1343.

2. Venue properly lies with this Court because the events giving rise to this cause of action occurred in Somerset County, Pennsylvania. Which is located within this judicial district pursuant to 28 U.S.C. §118 (c).

III. <u>Parties</u>

3. Fernando Nunez Jr.,("Plaintiff"), is a state prisoner who at all times relevant to this action was formerly incarcerated at SCI Somerset in their RHU.

4. Mark Borstnar ("Borstnar"), at all times relevant to this action was a corrections officer ("c/o"), assigned to work in SCI Somerset's RHU and was acting under color of state law as an employee for the DOC. He is being sued in his individual capacity.

5. Landon Sinclair ("Sinclair"), at all times relevant to this action was a c/o assigned to work in SCI Somerset's RHU and was acting under color of state law as an employee for the DOC. He is being sued in his individual capacity.

6. Brandon Croyle ("Croyle"), at all times relevant to this action was a Sargeant assigned to work in SCI Somerset's RHU and was acting under color of state law as an employee for the DOC. He is being sued in his individual capacity.

7. Lieutenant Levadnuk ("Levadnuk"), at all times relevant to this action was a Lieutenant assigned to supervise c/o's and Sargeants working in the RHU at SCI Somerset and was acting under color of state law as an employee for the DOC. He is being sued in his individual capacity.

IV. <u>Factual Allegations Common to all Counts</u>

8. At all times relevant to this action Plaintiff was housed in SCI Somerset's RHU on the restricted release list ("RRL"). <u>See</u> Exhibit (1) (Plaintiff's Cell History).

9. At all times relevant to this action Plaintiff suffered from a mental impairment and was diagnosed with persistent depressive disorder ("dysthymia"), and was actively on SCI Somerset's mental health C roster, and receiving psychiatric treatment. <u>See</u> Exhibit (2)(Symptoms & Causes of Dysthymia).

10. On or about May of 2018, Defendant Sinclair was served with a copy of a lawsuit Plaintiff filed against him - for the use of excessive force - in the Court of Common Pleas of Somerset County in <u>Nunez v. Sinclair et al.</u>, Case #274 of 2018. ("Sinclair Lawsuit").

11. On June 18, 2018, Defendant Sinclair, through counsel, filed a notice of removal with the state court to have his lawsuit moved to federal court and docketed under <u>Nunez v. Sinclair, et al.</u>,Case #3:18-cv-00129.

12. On June 28, 2018, after Defendant Sinclair was served with a copy of the Sinclair lawsuit, he called the Plaintiff a "pussy" and "rat" in front of other inmates while in the RHU yard.

13. On June 30, 2018, Defendant Sinclair continued to retaliate against the Plaintiff by limiting his access to the phone to call his wife and children.

14. Once served with the Sinclair lawsuit, Sinclair told his co'workers, Defendant(s) Borstnar, Croyle, and Levadnuk that the Plaintiff sued him.

15. On June 2, 2018, Defendant Borstnar entered Plaintiff's cell and without reason threw away sentimental personal property belonging to the plaintiff, into a trash can.

16. On July 2, 2018 Plaintiff forwarded a request of staff slip to Melissa Hainsworth (SCI Somerset's former Superintendent), and Security Captain, informing them both that Defendants' Borstnar and Sinclair were actively retaliating against him. See Exhibit (3)(Request Slips forwarded to Ms.Hainsworth & Captain Furman).

17. On Tuesday, July 3, 2018, Plaintiff attended a video deposition in relation to, Nunez v. C/O Wertz, et al.,Case #3:14-cv-00727, an unrelated civil action alleging 1st Amendment retaliation violations that occurred when the Plaintiff was housed at SCI Smithfield.

18. Present through out the entire video deposition with the Plaintiff was Defendant Borstnar.

19. After Plaintiff's video deposition was concluded, Defendant Borstnar escorted him back to his housing unit and yelled,"Rat on the pod! Rat on the pod!"

20. From July 3, 2018 to July 28, 2018, Defendant Borstnar, denied the Plaintiff access to the phone a total of four (4) times. In retaliation for filing the Sinclair & Wertz lawsuits, and previous grievances (#731795 & #730636), Plaintiff filed against him, Croyle, and, Sinclair.

21. In August of 2018, Defendant Borstnar was served with a copy of a lawsuit Plaintiff filed against him in the Court of Common Pleas of Somerset County in Nunez v. Borstnar et al.,Case #452 of 2018.

22. On August 22, 2018, Defendant Borstnar, through counsel, filed a notice of removal with the state court to have the Plaintiff's lawsuit moved to federal court and docketed under <u>Nunez v. Borstnar et al.,</u>Case #3:18-cv-00165. ("Borstnar Lawsuit").

23. From August of 2018 to November 6, 2018, Defendant Borstnar denied the Plaintiff access to the phone a total of four (4) additional times. In retaliation for the Plaintiff engaging in the constistutionally protected activity noted in ¶ 10, ¶¶ 16-17, and ¶¶ 20-21.

24. On December 21, 2018 Plaintiff attempted to intiate a new civil action against, inter alia, Defendant Croyle, by filing an In forma Pauperis ("IFP") petition with the Prothonotary office of Somerset County.

25. On December 24, 2018, the Prothonotary's office of Somerset County mailed Plaintiff IFP petition back to him. Along with a cover letter advising him that the Court was in need of his Complaint in order for them to approve his IFP petition.

26. On December 28, 2018 Defendant(s) Borstnar, Croyle, Sinclair, and, Levadnuk, were the designated officers assigned to work in the RHU at SCI Somerset.

27. On December 28, 2018 at approximately 11:30 AM, Plaintiff was escorted to the RHU non-contact visiting room area to retrieve several pieces of incoming legal mail.

28. The first piece of incoming legal mail was from the U.S. Western District Court, Clerk of Court's Office, and contained a court order in relation to the <u>Borstnar</u> lawsuit.

29. The second piece of incoming mail was from the Prothonotary's Office of Somerset County and contained the documents noted in ¶ 25. In addition to a time stamped Civil Cover sheet naming Defendant Croyle as the leading Defendant in Plaintiff's anticipated lawsuit.[1]

30. Because the photo copying machine in the RHU visiting area was not working, Plaintiff was escorted to the RHU Sargent's office to have his legal mail photo copied in the presence of Defendant(s) Borstnar, Croyle, Sinclair, Levadnuk, and a c/o trainee.

31. The c/o trainee did not know how to operate the photo copying machine so Defendant Croyle instructed Defendant Borstnar to assist the c/o trainee in photo copying Plaintiff's legal documents.

32. As Defendant Borstnar was assisting the c/o trainee in photo copying plaintiff's legal documents, he noticed that those documents bore his name and Defendant Croyle's name.

33. In a poor attempt of humor, Defendant Borstnar yelled out,"Hey Srg! Looks like Nunez sued you too." Which prompted Defendant Croyle to ask,"What for?"

34. Plaintiff stated,"For denying me a razor, phone calls, and, law library a few months ago."

---

1. Plaintiff's lawsuit was refiled with the Prothonotary's office of Somerset County, sometime in January of 2019. But that suit was later transferred to the Commonwealth Court of Pennsylvania and docketed under, Nunez v. Croyle et al.,Case #63 M.D. 2019.

35. Defendant Croyle, replied,"Are you fucking kidding me? You can't sue me for that shit. Aren't you scheduled for law library today?" Plaintiff said,"Yeah. At 1:45 PM."

36. Defendant Croyle then told the Plaintiff,"Well your burnt. Add that to everything else your suing me for. I don't give a fuck."

37. In an attempt to intimidate the Plaintiff, Defendant Levadnuk, said,"Don't look at me. You want to be a paper pusher. Well this is exactly why my officers keep treating you the way they have been treating you. So don't come bitching to me when they don't take you to the law library or let you use the phone."

38. As a consequence of exercising his 1st Amendment rights, Defendants' Croyle, Levadnuk, Sinclair, and, Borstnar, each denied Plaintiff access to the law library on December 28, 2018, although they each knew he was scheduled to use it at 1:45 PM.

39. On December 31, 2018 Plaintiff submitted a grievance (#778726) and attached a copy of all the relevant legal documents that Defendant Borstnar assisted the c/o trainee in photo copying to substantiate his grieved allegations. See Exhibit (4)(Grievance #778726).

40. On January 5, 2019 Plaintiff was scheduled to make a phone call between the hours of 11:00 AM to 2:00 PM.

41. On January 5, 2019 Defendants' Borstnar, Croyle, and, Levadnuk, were the designated officers assigned to work in the RHU at SCI Somerset.

42. On January 5, 2019, as Defendant Borstnar was inventorying Plaintiff's commissary items, Plaintiff informed him that he was scheduled to use the phone between 11:00 AM to 2:00 PM.

43. Defendant Borstnar said, "You just filed a greievance on us. Fuck your phone call." And then walked away from plaintiff's cell.

44. When Defendants' Croyle and Levadnuk made their individual rounds on the Plaintiff's housing unit, he told each of them that Borstnar doesn't want to let him use the phone."

45. On January 25, 2019 Plaintiff filed a grievance (#783363) against Defendants' Borstnar, Croyle, and, Levadnuk, for denying him access to the phone on January 5, 2019, between the hours of 11:00 AM to 2:00 PM. See Exhibit (5)(Grievance #783363).

## V. Causes of Action

### COUNT 1
### NUNEZ V. CROYLE, et al.
### DECEMBER 28, 2018 - RETALIATION

46. Plaintiff incorporates by reference ¶¶ 24-38, of this amended complaint as if stated in full herein in support of this cause of action.

47. Defendant Croyle knew Plaintiff was engaged in constitutionally protected conduct under the 1st Amendment Free Speech & Petition Clauses when he ~~was~~ attempted to file a lawsuit against ~~against~~ him.

48. Defendant Croyle acted outside the scope of his duties when he retaliated against the Plaintiff for exercising his 1st Amendment rights.

49. After Defendant Croyle became informed that the Plaintiff had sued him, Defendant Croyle, took immediate adverse action against the Plaintiff by denying him access to the RHU law library and kiosk. Which also prevented the Plaintiff from sending and receiving emails from family and friends.

50. The motivitating factors that caused Defendant Croyle to continue to retaliate against the Plaintiff, was his awareness of the Plaintiff's protected activity noted in ¶ 14, ¶¶ 20-21, and ¶ 24.

51. No legitimate reason can be asserted to excuse the retaliation taken against the Plaintiff by Defendant Croyle.

52. Plaintiff has produced a sufficient pattern of antagonism coupled with timing to establish a casual connection between the constitutionally protected activity outlined in ¶ 50, and the resulting adverse action taken against him by Defendant Croyle.

53. Plaintiff suffered psychological/Mental harm as a result of Defendant Croyle's pattern of antagonism.

COUNT 2
NUNEZ V. BORSTNAR, et al.
DECEMBER 28, 2018 - RETALIATION

54. Plaintiff incorporates by reference ¶¶ 24-38, of this amended complaint as if stated in full herein in support of this cause of action.

55. When conducting his 30 minute tour on Plaintiff's housing unit, Plaintiff warned Defendant Borstnar that if was denied access to the law library at his scheduled time, he would file a grievance against him.

56. Defendant Borstnar replied,"Lt.Levadnuk and Sgt.Croyle already said your not going and i'm not taking you. You sued me too. Remember asshole?"

57. Defendant Borstnar knew Plaintiff was engaged in constitutionally protected conduct under the Free Speech & Petition Clauses of the 1st Amendment before he denied Plaintiff access to the RHU law library.

58. Defendant Borstnar acted outside the scope of his duties when he retaliated against the Plaintiff for exercising his 1st Amendment rights.

59. Defendant Borstnar took adverse action against the Plaintiff by denying him access to the RHU law library. Which also prevented him from accessing the kiosk to send and receive emails from family and friends.

60. The motivating factors that caused Defendant Borstnar to take adverse actions against the Plaintiff, was his direct knowledge of his protected activities noted in ¶ 14, ¶¶ 16-21, and ¶ 33. In addition to Plaintiff's threat to grieve him if he denied him access to the law library.

61. No legitimate reason can be asserted by Defendant Borstnar to excuse the retalitory adverse action taken against the Plaintiff.

10

62. Plaintiff has produced a sufficient pattern of antagonism in ¶ 15, ¶¶ 19-20, ¶ 23, and ¶ 59, coupled with timing to establish a casual connection between the constitutionally protected activity noted in ¶ 60, and the resulting adverse action taken against him by Defendant Borstnar.

63. Plaintiff suffered pyschological/mental harm as a result of Defendant Borstnar's pattern of antagonism.

COUNT 3
NUNEZ V. SINCLAIR, et al.
DECEMBER 28, 2018 - RETALIATION

64. Plaintiff incorporates by reference ¶¶ 10-14, and ¶¶ 16-38, of this amended complaint as if stated in full herein in support of this cause of action.

65. When conducting his 30 minute tour on Plaintiff's housing unit, Plaintiff warned Defendant Sinclair that if he was denied law library, he will write everybody up.

66. Defendant Sinclair said,"I don't give a fuck about your grievances or lawsuits. So you can keep threatening us all you want. Nobody is taking you to the law library."

67. Defenant Sinclair acted outside the scope of his duties when he retaliated against the Plaintiff for exercising his 1st Amendment rights under the Free Speech & Petition Clauses.

68. Defendant Sinclair took adverse against the Plaintiff by denying him access to the RHU law library and kiosk to send and receive emails.

11

69. The motivating factors that caused Defendant Sinclair to take adverse action the Plaintiff was his direct knowledge of Plaintiff's protected activities noted in ¶ 10, and ¶¶ 30-34. In addition to Plaintiff's threat to grieve him if he denied the Plaintiff access to the RHU law library.

70. No legitimate reason can be asserted by Defendant Sinclair to excuse the retalitory adverse action taken against the Plaintiff.

71. Plaintiff has produced a sufficient pattern of antagonism in ¶10, ¶¶ 12-14, ¶ 16, and ¶ 66, coupled with timing, to establish a casual connection between the constitutionally protected activity in ¶ 67, and the resulting adverse action taken against him by Defendant Sinclair.

72. Plaintiff suffered psychological/mental harm as a result of Defendant Sinclair's pattern or antagonism.

COUNT 4
DECEMBER 28, 2018 - CONSPIRACY TO VIOLATE CIVIL RIGHTS

73. Plaintiff incorporates by reference ¶¶ 24-38, ¶¶ 49-50, ¶¶ 55-56, and ¶¶ 65-66, of this amended complaint as if stated in full herein in support of this cause of action.

74. Defendants' Croyle, Borstnar, Sinclair, and Levadnuk,("Officer Defendants"),each has an individual legal duty to not violate Plaintiff's 1st Amendment rights.

75. The Officer Defendants acted with a common purpose to retaliate against the Plaintiff by denying him access to the law library and kiosk. Violating his 1st Amendment right.

76. Two hours before the plaintiff was scheduled to go to the law library, Defendant Croyle told the plaintiff he wasn't going after Defendant Borstnar informed him - in the presence of Defendant Sinclair & Defendant Levadnuk - that the Plaintiff was attempting to file a lawsuit against him.

77. Defendant Levadnuk signaled his approval of Defendant Croyle taking adverse action against the Plaintiff and implied to Defendants Sinclair and Borstnar that it was ok for his officers to treat him the way they have so long as he continues to be a "paper pusher".

78. When the Plaintiff was taken back to his cell he asked Defendants' Borstnar and Sinclair if he could attend his law library session and they each told him that Sgt.Croyle and Lt.Levadnuk told them that the Plaintiff was "burnt". (i.e.,wasn't going).

79. In the furtherance of their conspiracy, Defendants' Croyle & Levadnuk, abused their position of authority and instructed Defendant Borstnar and Sinclair to NOT escort the Plaintiff to the RHU law library at 1:45 PM.

80. In attempt to further conceal their unconstitutional actions, the Officer Defendants destroyed all record documents evidencing Plaintiff was scheduled for law library at 1:45 PM.

81. The Officer Defendants by the above described actions conspired to retaliate against the Plaintiff in violation of his 1st Amendment rights.

82. Plaintiff suffered psychological/mental harm as a result of the Officer Defendant actions described above.

COUNT 5
NUNEZ V. BORSTNAR, et al.
JANUARY 5, 2019 - RETALIATION

83. Plaintiff incorporates by reference ¶¶ 40-45, of this amended complaint as if stated in full herein in support of this cause of action.

84. After Defendant Borstnar was interviewed in relation to grievance # 778726, he took adverse action against the Plaintiff by denying him an opportunity to make his scheduled phone call to his wife and children.

85. Defendant Borstnar knew Plaintiff was scheduled to use the phone on the date and time at issue because Plaintiff told him so when he was inventorying Plaintiff's commissary in front of his cell.

86. The motivating factor that caused Defendant Borstnar to retaliate against the Plaintiff was his direct knowledge of Plaintiff's protected activities noted in ¶ 14, ¶¶ 16-21, ¶ 24, ¶¶ 33-34, and ¶ 38.

87. No legitimate reason can be asserted by Defendant Borstnar to excuse the retalitory adverse action taken against the Plaintiff.

88. Defendant Borstnar acted outside the scope of his duties when he retaliated against the Plaintiff for exercising his 1st Amendment rights under the Free Speech & Petition Clauses.

89. At the time Defendant Borstnar retaliated against the Plaintiff, he knew Plaintiff was engaged in constitutionally protected conduct under the 1st Amendment.

90. Plaintiff has produced a sufficient pattern of antagonism in ¶15, ¶¶ 19-20, ¶ 23, ¶ 38, and ¶ 84, coupled with timing, to establish a casual connection between the constitutionally protected activity noted in ¶ 86, and the resulting adverse action taken against him by Defendant Borstnar.

91. Plaintiff suffered psychological/mental harm as a result of Defendant Borstnar's pattern of antagonism.

COUNT 6
NUNEZ V. CROYLE, et al.
JANUARY 5, 2019 - RETALIATION

92. Plaintiff incorporates by reference ¶¶ 40-45, of this amended complaint as if stated in full herein in support of this cause of action.

93. When Defendant Croyle was making his daily round on the Plaintiff's housing unit, Plaintiff told him that Defendant Borstnar doesn't want to give him the phone to make his call.

94. Defendant Croyle said,"I wonder why? Didn't you sue him too?" When the Plaintiff confirmed that he had, Defendant Croyle said,"You should have thought twice about suing your block officer. Their the one's who give you the phone. And guess who's the one who tells them to let you use the phone when your scheduled? Me. But you sued me to. So your fucked.

95. Defendant Croyle acted outside the scope of his duties when he retaliated against the Plaintiff for exercising his 1st Amendment rights under the Free Speech & Petition Clauses.

96. At the time Defendant Croyle took adverse action against the Plaintiff, he knew the Plaintiff was engaged in constitutionally protected conduct under the 1st Amendment.

97. The motivating factor that caused Defendant Croyle to retaliate against the Plaintiff was his awareness of Plaintiff's protected activities noted in ¶ 14, ¶¶ 24-34, and ¶ 39.

98. Plaintiff has produced a sufficient pattern of antagonism in ¶¶ 30-39, and ¶ 95, coupled with timing, to establish a casual connection between the constitutionally protected activity noted in ¶ 94, and the resulting adverse action taken against him by Defendant Croyle.

99. No legitimate reason can be asserted by Defendant Croyle to excuse the retalitory adverse action taken against the Plaintiff.

100. Plaintiff suffered psychological/mental harm.

COUNT 7
NUNEZ V. LEVADNUK, et al.
JANUARY 5, 2019 - RETALIATION

101. Plaintiff incorporates by reference ¶¶ 40-45, of this amended complaint as if stated in full herein in support of this cause of action.

102. When Defendant Levadnuk was making his daily round on the Plaintiff's housing unit, Plaintiff told him that Defendants' Borstnar and Croyle weren't allowing him access to the phone.

103. Defendant Levadnuk told the Plaintiff,"Borstnar's your block officer and Croyle's the RHU Sgt. Whether or not you get the phone is up to them. And from what I know, you sued them both. I told you a few days ago, this is how my officers are gonna treat you when you file lawsuits against them."

104. Defendant Levadnuk acted outside the scope of his duties when he retaliated against the Plaintiff for exercising his 1st Amendment rights under the Free Speech & Petition Clauses.

105. Defendant Levadnuk took adverse action against the Plaintiff after he learned that the Plaintiff was engaged constitutionally protected conduct under the 1st Amendment.

106. The motivating factor that caused Defendant Levadnuk to take adverse action against the Plaintiff was his awareness of Plaintiff's lawsuits against Defendants' Croyle and Borstnar.

107. Plaintiff has produced a sufficient pattern of antagonism in ¶¶ 30-44, coupled with timing, to establish a casual connection between the constitutionally protected activity noted in ¶ 106, and the resulting adverse action taken against him,(denial of a phone call), by Defendant Levadnuk.

108. No legitimate reason can be asserted by Defendant Levadnuk to excuse the retalitory adverse action taken against the Plaintiff.

109. Plaintiff suffered psychological/mental harm as a result of Defendant Levadnuk's retaliation.

## VI. RELIEF REQUESTED

110. Plaintiff requests the following relief:

A. DECLARATORY JUDGMENT, stating:

1. The acts described within the body of this amended amended complaint violated Plaintiff's 1st Amendment rights under the United States Constitution.

B. AWARD PUNITIVE DAMAGES:

1. In the amount of $10,000, per count, against each Defendant, in their individual capacity.

C. AWARD NOMINAL DAMAGES:

1. In favor of Plaintiff as allowed by law.

D. AWARD ANY OTHER RELIEF THIS COURT DEEMS JUST AND FAIR.

Dated: December 5, 2020

BY, _Fernando Nunez Jr._
Fernando Nunez Jr.
( PRO SE PLAINTIFF )

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Amended Complaint was served via First Class, pre-paid postage mail, and addressed to the person and address noted below:

Sarah J. Simkin, Esq.
Deputy Attorney General
Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222


Date: December 5, 2020                     By, _____
                                              Fernando Nunez Jr.
                                              SCI @ Mahanoy, #FM8959
                                              301 Morea Road
                                              Frackville, PA 17932